IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA S. ALLEN,

          Plaintiff,

vs.                                  No. 09-4139-SAC

MAGIC MEDIA, INC.,

          Defendant.

MEMORANDUM AND ORDER

This employment discrimination case comes before the court on defendant's motion for summary judgment. Plaintiff brings claims of sex and age discrimination under the ADEA, 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, and their state counterparts, *see* K.S.A. 44-1111. Plaintiff additionally purports to state an Equal Pay Act claim under 29 U.S.C. § 206(d).

**Summary Judgment Standard**

"Summary judgment is appropriate if the record evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1255 (10th Cir. 005) (citing Fed.R.Civ.P. 56(c)). A defendant seeking summary judgment bears the initial burden of specifically identifying the evidence that demonstrates the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 -1130 (10th Cir. 2009); *Franklin v. Thompson*, 981 F.2d 1168, 1169 -1170 (10th Cir. 1992). If the defendant meets that burden, the

burden shifts to the plaintiff to establish that a genuine issue as to any material fact actually does exist. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

But even if a plaintiff's response fails to show an issue of material fact, the defendant still bears the burden of demonstrating it is entitled to summary judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c).*" Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002). "If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied even if no opposing evidentiary matter is presented." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160-61 (1970); *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

The Court first examines defendant's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and of showing that it is entitled to judgment as a matter of law. To meet its burden of production required to support summary judgment, defendant "need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (citation omitted).

**Uncontroverted facts**

Linda Allen was hired by defendant on January 30, 2005 as an employee at will to sell outdoor advertising. Plaintiff worked primarily out of her home, but came into the

office in Kansas City on a weekly or monthly basis for meetings. While plaintiff worked for defendant, defendant had five salespeople in the region. Although each salesperson was assigned a different geographic territory, all were free to earn commissions outside their assigned territories. In 2008, plaintiff's territory included all of the state of Kansas except for six counties near Joplin, Missouri. Plaintiff was responsible for the condition of the billboards in her territory, management of existing customer accounts, and solicitation of new business.

On one occasion Mr. Kuminkoski, in front of other employees, used a "feminine voice" to mock her erroneous prediction that space would be sold on a new billboard. Plaintiff's claim of a hostile work environment in and around Mr. Kuminkoski's office includes his telephone calls with his wife, which plaintiff overheard.

Plaintiff was placed on performance review in the summer of 2008, at which time her immediate supervisor was a woman. Plaintiff was terminated on October 17, 2008. In 2008, all salespersons in the region were over the age of 40. Plaintiff's duties were taken over by a former manager who had previously been demoted. No replacement was hired until a 37 year-old male began work just less than one year after plaintiff's termination. After filing a charge of employment discrimination with the EEOC, plaintiff timely filed this lawsuit.

**Unsupported factual allegations**

Many of the remaining facts asserted by defendant are unsupported by the citation to the record. The Court takes the unusual step below of quoting the numbered fact asserted by defendant, and then quoting or summarizing the record cited by

3

defendant in support thereof.[1]

> 10. [Plaintiff's] deposition testimony confirms that all of the salespeople were paid the same compensation, a base salary and 5% commission, with one exception. A senior salesman who was formerly a manager retained his rate of pay when he was demoted from management. Her testimony confirms that no two of the employees performed the same work, with each assigned a different geographical territory to serve. (Allen Depo., pp. 19, 42)

Dk. 38, p. 3.

The only arguably relevant portions of plaintiff's testimony on the cited pages are quoted below:

> Q. And how were you compensated for your services to begin with?
> A. A small base, salary base.
> Q. How much was that?
> A. I don't remember. And to begin with, there was a car allowance, and then you had mileage and commission.
> Q. How much was your commission?
> A. Five percent.

Dk. 38, Exh. D, Allen depo. p. 19

> Q. What happened to Matthew?
> A. He – Bernie demoted him. He took the title of sales manager away from him and made him a senior sales representative.
> Q. Was Matthew still there when you were terminated?
> A. Yes.
> Q. Still doing the same work that he had been demoted to?
> A. He got my job.
> Q. What job had he had before you left?
> A. Sales representative.
> Q. In the southern Missouri, midstate Missouri, Kansas City metro area?
> A. Yes.

Dk. 38, Exh. D, Allen depo. p. 42. The cited testimony fails to show that all of the

---

[1] Local Rule 56.1 requires that the movant's facts "must refer with particularity to those portions of the record upon which movant relies." Here, defendant provides no line numbers but cites only to deposition pages. Accordingly, the Court includes only those portions of the cited pages which are arguably relevant.

salespeople were paid the same compensation, fails to show that any salespersons other than the plaintiff received a base salary and 5% commission, fails to show that a former manager retained his rate of pay when he was demoted, and fails to show that no two employees performed the same work, or that each was assigned a different geographical territory to serve.

> 11. Plaintiff's complaints all relate to a change of management style that commenced when Bernie Kuminkoski became the sales manager. (Marco Depo., pp. 75-76)

The cited testimony supports that there was a change of management style, "like night and day" when Mr. Kuminkoski became the sales manager. Plaintiff admits that Mr. Kuminkoski was a "micro manager" whose managerial style differed significantly from that of the prior manager, but the cited record does not support the conclusion that all of plaintiff's complaints relate to that style change.

> 13. When Mr. Kuminkoski became sales manager all of the sales staff were told they might be fired if their productivity did not increase. (Allen Depo., p. 45)

The cited testimony states in relevant part:

> Q. So then what happened in June of '08?
> A. In June of '08, we were told that the CEO was going through each region and was firing those who were not performing.
> Q. Okay.
> A. And at that point, I was told that I was going to be put on a performance review.
> Q. And who told you that?
> A. Bernie.

Allen depo. P. 45. This testimony speaks to events in June of '08, but does not suggest that Mr. Kuminkoski became sales manager in June of '08, and does not show that all of the sales staff were told at any time that they might be fired if their productivity did not increase.

5

> 14. Two younger employees were placed on performance review, and each of them resigned when they could not meet the performance goals. (Marco Depo. 80-81).

The cited testimony does not establish that any employee was younger than the plaintiff. It does establish the following: that Kent Briscoe was put on a performance plan; that Kent Briscoe quit "because there were never any sales going on in that area," and that three employees left (a young black female employee named Janice, Laura McDonald (the Office Manager), and a male salesperson in Joplin). The cited pages provide no further information about anyone being put on performance review or failing to meet performance goals.

> 16. [Plaintiff, Linda Allen] was fired when her performance failed to meet the standards demanded of her. Marco Depo., p.118)

The cited testimony asks Ms. Marco to review the contents of an email that she neither sent nor received:

> Q. Okay. Exhibit Number 16. What in there is Linda Allen doing that was wrong that you indicated to her?
> A. I didn't indicate anything to her because the E-mail's not from me. It's to Bernie from Linda.
> Q. Is there anything in that E-mail that indicates that what Linda was doing was wrong?
> A. Other than she wasn't contacting the customer.
> Q. And how do you know that?
> A. "Linda sent an E-mail to Emily..." Let's see. "Obviously, vinyls (sic)" -- let's see. Where are we at? "Emily contacted Linda several times in June and July for the posting confirmation photos and never heard back." That would be Number 5. In June and July, "Linda sent an E-mail to Emily 7/21 (sic,) informing her that the boards were actually 10 x 36. No mention was made that the vinyls were never posted." That's Number 6."

Marco depo. P. 118. Although the e-mail may show that the plaintiff did not respond to a customer named Emily in June or July of some unstated year, it does not support defendant's proposition that plaintiff was fired either "when her performance failed to

meet the standards demanded of her," or because of that reason. Nor does it establish who made the decision to terminate plaintiff's employment.

> 18. [Teresa Marco Wheeler] testified that the reason Ms. Allen was fired was failure to meet performance requirements, and not anything related to her gender or her age. (Marco Depo., pp. 20-21,174)[2]

The cited testimony follows:

> Q. Okay. Now, Ms – Ms. Allen has filed a lawsuit ... alleging that she was terminated because of age and gender bias, are you aware of that?
> A. Yeah. I mean, just what I've read, yes.
> Q. Right. Is there anything that you know about this case that would cause you to conclude that the – the real reason that she was fired was because she was a woman?
> A. No.
> Q. Is there anything that you know that would cause you to believe that she was fired because she was over the age of 50 or 55 or 60,even?
> A. No.
> Q. Or – or a combination of the two: That she was both a woman and – and someone over the age of 50, 55, 60?
> A. No.

p. 20-21. The cited testimony establishes only Ms. Marco's lack of knowledge of any age or sex discrimination in plaintiff's termination, and lends no support to defendant's proposition that the reason plaintiff was fired was her "failure to meet performance requirements." The testimony also fails to explain who Ms. Marco was, or the relevance of her testimony.[3]

> 19. Mr. Kuminkoski also testified in his deposition that the reason for terminating plaintiff was failure to meet her performance goals, not anything related to age or gender. (Kuminkoski Depo., p. 95)

---

[2]Defendant's citation to page 174 is in error, as Ms. Marco's deposition ends at page 154. The Court has reviewed page 147 as well, but finds it inapplicable.

[3]The Court presumes that Ms. Marco was plaintiff's immediate supervisor on the date of plaintiff's termination, but the cited record does not establish those facts.

7

The cited testimony follows:

> Q. At the time Linda Allen was hired in January of 2005, she would have been over the age of 50, over the age of 55. Correct?
> A. Yes.
> Q. Was she fired because she was a woman?
> A. No.
> Q. Was she fired because she was over the age of 50 or 55 or 60, or that she was 61 years old?
> A. No.
> Q. Was she fired because she was both a woman and 61 years of age?
> A. No.
> Q. Why was she fired?
> A. It was strictly performance. And when meaning performance, it's more than the figures we're looking at of occupancy rates and revenue. That also includes renewal rates, knowing your market, market conditions, error free work, computer skills, follow-through with clients,

Kuminkoski depo. p. 95. Neither this nor other testimony cited by defendant establishes who made the decision to terminate the plaintiff's employment. Because it could have been Mr. Kuminkoski or the CEO alluded to before or someone else, or a combination of persons, no basis of knowledge for Mr. Kuminkoski's testimony has been established. Nor has the record established Mr. Kuminkoski's position with the company, or his authority to make a termination decision. Absent that foundation in any of defendant's cited record, this testimony is nothing but conclusory. Even were the court to presume that Mr. Kuminkoski was the authorized and actual decisionmaker, his testimony states only that plaintiff was fired strictly for performance, which term he then defines. He fails to support his conclusion with any facts showing that plaintiff's performance warranted termination, in his determination.

> 23. Ms. Allen was expected to travel by car to inspect billboards and contact customers. By her own testimony she seldom left the immediate area of Topeka in 2008, contrary to the expectations of her supervisors. (Allen Depo., p. 90-91)

The cited testimony follows:

> Q. All right. Did you file travel logs with the company indicating travel that you had done in pursuit of your job?
> A. Yes.
> Q. Would it be fair that your travel logs would show that you rarely left the Topeka vicinity?
> A. No, sir. Because I was told by Mr. Kuminkoski to get the digital locations sold. And after the advertising agency turned me down on what I thought was going to happen, I had to spend a lot of time in here trying. And I told him that I felt that it was better to try and sell these than to go out and sell 75 to $300 boards in western Kansas, and he agreed.
> Q. So would it be fair to say your travel logs would show you didn't travel from Topeka very often. I'm not asking for the reason. I'm just saying your travel logs would reflect that, wouldn't they?
> A. Well, if it was a concentrated effort in Topeka, Yes, it would.
> Q. Is that true then, it would show that you rarely traveled from Topeka?
> A. In the last part of my – in the waning months of my career, yes.

This testimony establishes only that the plaintiff rarely traveled from Topeka in the waning months of her career. Whether the "waning months" were two, twelve, or some other length of time has not been established. The testimony does not express anyone's expectation that plaintiff would travel by car to inspect billboards or contact customers, and does not support defendant's assertion that plaintiff's working largely in the Topeka vicinity was contrary to the expectations of any of her supervisors. To the contrary, the testimony expressly says that Mr. Kuminkoski agreed that plaintiff should focus on the Topeka market instead of traveling to western Kansas.

> 28. Plaintiff testified in her deposition that she has no personal knowledge of any gender-based or age-based discrimination by her superiors at Magic Media.

The cited testimony states that plaintiff has no personal knowledge of any gender-based or age-based comments about her made by her superiors, Allen depo. pp 117-118, but fails to contain any broader admission by plaintiff of lack of knowledge of any prohibited age or sex discrimination.

9

29. As far as [plaintiff] could tell, Mr. Kuminkoski was unfair and abusive to all employees, not just the women or the older workers. (Allen Depo. p. 102-104)

The cited pages ask plaintiff about a document dated February 27, 2009, signed by employees other than herself.

> Q. Okay. Did you gather from this document that he was going out of his way to single out people on the basis of they were male or female or just everybody?
> A. I don't think that's designated male or female.
> Q. Or that they were younger or older?
> A. In this situation, it seems –
> Q. Kind of equally nasty to everybody?
> A. Well –
> Q. I mean, is that the way you get it?
> A. You know, he was being the bully.
> Q. Yeah. But I mean equally bully to everybody?
> A. I don't know. I wasn't there, so I can't answer.
> Q. I mean is that the import of what this is?
> A. You know, many of those things that they have stated are very, very true. I don't think in this it has any distinction between male and female. If it does, it's that they're all asking for help.
> Q. No distinction between male and female. No distinction between on e age group versus another. Would that be fair?
> A. I think it's the employees that are –
> Q. Right.
> A. It's not him picking on the employees. I mean this is the stuff that happens, yeah. But these people are saying help me with this. And so I don't think this has anything to do with –
> Q. Sex.
> A. I don't.
> Q. Age? Right?
> A. I wasn't there. I can't answer.
> Q. But this shows no distinction between whether you're male or female or whether you're older or younger, does it, Exhibit 5?
> A. I feel like I'm being pushed into a corner here. And I think I've answered it. I wasn't here, so I don't know if he was singling out anybody or due to age and sex. I don't know.

This testimony is limited to plaintiff's examination of a complaint letter written by other employees to someone other than the plaintiff approximately four months after plaintiff's termination. Her examination of that letter, above, fails to support defendant's

10

proposition that "as far as [plaintiff] could tell, Mr. Kuminkoski was unfair and abusive to all employees, not just the women or the older workers." Although defendant's theory is that Mr. Kuminkoski was an "equal opportunity ogre," Dk. 44, p. 20, counsel failed to establish plaintiff's adoption of that theory.

> 32. Since [plaintiff's] job responsibilities were reassigned following her departure, the results achieved in the geographical area that were her responsibility have improved significantly. (Kuminkoski, Depo., p. 103-104)

The cited testimony fails to support this proposition. It states in relevant part:

> Q. Okay. Now when you came on board in '06, and I – just in general, what did the bottom line in this division look like?
> A. Bottom line was less than five percent.
> Q. Profitability?
> A. Profitability.
> Q. Okay. What about today?
> A. High 20s in a bad economy.
> Q. And I think you indicated there were five sales people back in '06?
> A. Yes.
> Q. And was that true even up until the time just immediately before Ms. Allen was terminated, still five?
> A. Yes.
> Q. What about now?
> A. Four.
> Q. So are you telling me that you're doing in the 20s now with four when, when you took over, you were somewhere around five?
> A. That is correct. ...

Plaintiff was terminated in 2008, not 2006. This testimony does not show that the results achieved in plaintiff's territory improved significantly after her departure. Instead, it shows that profits went from less than 5% to the high 20's at some unspecified time between 2006 and June of 2010 when the deposition was taken. It is just as likely that the profitability increased in the two years before plaintiff was terminated as in the two years after she was terminated. Nor does the testimony attempt to show that profitability improved because the plaintiff left, so no relevance of the testimony has been shown.

11

**Analysis**

Surprisingly few facts are properly established by defendant's factual assertions. The Court need consider only the cited materials. Without a specific reference, the Court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")). Defendant cannot establish the facts essential to its summary judgment motion by innuendo or by argument of counsel, or by anything but the evidence of record.

Defendant argues that plaintiff cannot make a prima facie case of discrimination because nobody was hired to take her place, Dk. 38, p. 7, but defendant fails to show that this an essential element of plaintiff's case, or even to set forth what it believes to be the elements of her prima facie case. "[T]he appropriate formulation of the prima facie case is flexible, looking to those logically salient circumstances of each case that may raise the requisite inference of discrimination. ... Thus, "where [as here] an employer contends the actual reason for termination is ... unsatisfactory conduct, the status of the employee's former position after his or her termination is irrelevant." (internal citation omitted.) *Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1191 (10th Cir. 2010).

Defendant additionally contends that the coworker who took over plaintiff's duties "produced better sales results" than plaintiff had achieved, that plaintiff was "not performing her work in a satisfactory manner according to both of her supervisors, one

of whom was a woman," and that "other employees who were as old as plaintiff, and other female employees, were not subjected to adverse job decisions." Dk. 38, p. 7. The cited record does not support any of these assertions.

Defendant additionally asserts that it had "nondiscriminatory business reasons for firing the plaintiff," as "described at length by both of her supervisors in their deposition testimony." *Id.* If the supervisors so testified, that testimony has not been provided to the Court. Given the substantial gaps in the materials submitted by defendant, the Court is compelled to find that defendant failed to fulfill its initial burden of specifically identifying the evidence demonstrating the absence of a triable issue of material fact as to plaintiff's age and sex discrimination claims.

It is unnecessary for the Court to reach other matters, including the timeliness of plaintiff's response and the admissibility of its attached affidavits. Because defendant did not meet its initial burden, plaintiff was not required to come forward with suitable opposing evidence to defeat the motion. *See Adickes*, 398 U.S. at 160; *Morris v. Travelers Indem. Co. of America*, 518 F.3d 755, 761 (10th Cir. 2008); *Fields v. Corrections Corp. of America,* 2006 WL 991100 (10th Cir. 2006). Accordingly, defendant's motion for summary judgment shall be denied.

**Equal Pay Act**

Defendant contends that this Court lacks jurisdiction to entertain plaintiff's recent claim of unequal pay because neither the EEOC charge nor plaintiff's complaint includes that issue.[4]

---

[4]Defendant additionally contends that plaintiff cannot make a prima facie case of pay disparity, but the Court does not reach that issue.

Plaintiff's EEOC charge[5] states in relevant part:

A. From January 2005, [to] October 17, 2008, I was subjected to disparate treatment compared to similarly situated younger, male employees, in that my monthly sales goals were higher, I was denied assistance in increasing my sales, and my suggestions and concerns were not seriously considered.
B. In June 2008, I was subjected to ridicule.
C. On August 7, 2008, I was placed on a monthly performance improvement plan.
D. On October 17, 2008, I was terminated.
... I hereby charge [defendant] with [illegal discrimination] in that I was subjected to disparate terms, conditions, and privileges of employment, ridicule, a monthly performance improvement plan, and terminated due to my sex, female, and my age, sixty-one.

Dk. 40, EEOC charge.

The Court liberally construes charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). The stated claims provide very specific examples of alleged discrimination in plaintiff's terms and conditions of employment, none of which hint at wage discrimination. Plaintiff's statement in the charge regarding differential treatment, followed as it was by specific examples not including unequal pay, is insufficient to fulfill her administrative exhaustion requirements to the extent she makes an equal pay claim under Title VII. Plaintiff does not argue in her EEOC charge that any part of this discriminatory treatment included a disparity in her salary compared to similarly situated male associates. Accordingly, she has not exhausted her administrative remedies as to this claim.

---

[5]Because defendant challenges the facts upon which the Court's subject matter jurisdiction is based, matters outside the pleadings may be considered. *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F .3d 1320, 1324 (10th Cir. 2002). Thus, the Court considers plaintiff's EEOC charge.

The Equal Pay Act, however, unlike Title VII, "has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." *Washington County v. Gunther*, 452 U.S. 161, 175, n. 14 (1981). Accordingly, the Court examines plaintiff's complaint to determine whether plaintiff has stated such a claim.[6] Plaintiff's civil complaint alleges disparate terms and conditions of employment, and lists "less pay" as an example. It does not allude to the "Equal Pay Act," or cite its statute, or make any other reference to pay. This reference is insufficient to state a separate claim upon which relief can be granted under the Equal Pay Act, but instead merely alleges unequal pay as an example of a disparate term and condition of plaintiff's employment which is actionable, if at all, only under Title VII.[7] Because plaintiff has failed to exhaust her administrative remedies for a Title VII unequal pay claim, that claim must be dismissed for lack of subject matter jurisdiction.

**Hostile Work Environment**

Defendant has not raised lack of administrative exhaustion or subject matter jurisdiction with respect to plaintiff's claim of hostile work environment, but instead alleges that plaintiff has failed to present sufficient facts to survive summary judgment on this claim. Nonetheless, "[s]ubject matter jurisdiction may be raised sua sponte by the court at any time during the course of the proceedings. Exhaustion of administrative

---

[6]Normally the Court would look to the Pretrial Order, which supercedes the pleadings, to make this determination. Here, however, that order (Dk. 36) is particularly unhelpful because it recognizes, yet fails to resolve, the issue whether plaintiff has ever pleaded an Equal Pay Act claim.

[7]A plaintiff can bring a sex-based pay discrimination claim under Title VII without suing under the EPA . *See* 42 U.S.C. § 2000e-2(a)(1); *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1362-63 (10th Cir. 1997).

remedies is a jurisdictional prerequisite to filing a Title VII claim in federal court."
*Edmond v. Athlete's Foot Group*, 1997 WL 699053, at *1, 129 F.3d 130 (10th Cir.1997) (citations omitted).[8]

Plaintiff's EEOC charge does not tend to allege that plaintiff was treated in a manner or degree sufficient to constitute a hostile work environment. *See generally Mitchell v. City and County of Denver*, 112 Fed.Appx. 662, 667-668, 2004 WL 2287756, 4 (10th Cir. 2004). To lay a factual foundation for a sexually hostile work environment claim, a plaintiff must allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is gender based and is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment because of her protected class. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007). Although a plaintiff need not spell out each of those elements in an EEOC charge, plaintiff must say something in the charge to put defendant on notice that she believes she has been the victim of a hostile work environment based on age, sex, or another protected class. Plaintiff's closest assertion is that "[i]n June 2008, [she] was subjected to ridicule," but this vague reference is to an unspecified event occurring on only one date, and does not suggest that whichever unnamed person ridiculed her did so on the basis of her age or sex, or did so severely or persistently, or occupied a supervisory or other position which could render the defendant liable. The allegations in plaintiff's EEOC charge, even when read most liberally and viewed collectively, would not put defendant on notice that plaintiff was

---

[8]Timely filing is not a jurisdictional prerequisite, but filing itself is a jurisdictional prerequisite. *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir .1996).

alleging a hostile work environment claim, and would not reasonably lead the EEOC to an investigation of such a claim.[9] Accordingly, the Court dismisses plaintiff's hostile work environment claim for failure to exhaust administrative remedies.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Dk. 37) is denied.

IT IS FURTHER ORDERED that plaintiff's claims for unequal pay and for hostile work environment are dismissed for lack of subject matter jurisdiction based on plaintiff's failure to exhaust her administrative remedies.

Dated this 16th day of November, 2010 at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

[9]The Court recognizes that in the event the scope of plaintiff's EEOC charge includes hostile work environment, the continuing violation doctrine may apply in examining the timeliness of acts outside the 300-day period that are part of the hostile work environment. *See Nat'l R.R. Passenger Crop. v. Morgan*, 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). *Morgan*, 536 U.S. at 115.